UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 2:18-CR-96-PPS-JEM |
| ) | |
| ONESIMO GUTIERREZ, ) | |
| ) | |
| Defendant. ) | |

## **OPINION AND ORDER**

This matter is before me on Onesimo Gutierrez's pro se motion for a reduction of sentence or compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [DE 44]. Gutierrez is a 63-year-old male incarcerated at Moshannon Valley Correctional Facility in Pennsylvania, who is scheduled to be released in November 2021. *Id.* at 10. Gutierrez claims his underlying health conditions of diabetes, high cholesterol, and high blood pressure place him at high risk of severe illness or death if he contracts COVID-19. *Id.* at 1. For the following reasons, the motion for compassionate release is denied.

### Background

I'll begin with a summary of the procedural background and facts of the case. On July 26, 2018, Gutierrez, a citizen of Mexico living in the United States with a green card, arranged to sell heroin in Hammond, Indiana. The following day, Gutierrez travelled to the agreed-upon location when he was stopped by the DEA. During the traffic stop, a K-9 unit showed a positive reaction to Gutierrez's vehicle. Inside, the DEA

found bags containing about two kilograms of heroin.  Gutierrez was arrested at the scene.

On February 20, 2019, Gutierrez pleaded guilty to knowingly distributing more than one kilogram of heroin. [DE 23.]  Gutierrez's final offense level was 25 and he had a criminal history category of I, with a guideline range of 57 to 71 months. [DE 32.] Because of Gutierrez's immigration status, he is subject to removal after service of his sentence. *Id.*  On August 13, 2019, I sentenced Gutierrez to a below guidelines sentence of 46 months imprisonment, followed by two years of supervised release. [DE 37.] Gutierrez is currently serving his sentence at Moshannon Valley Correctional Facility with a projected release date of November 2021.  [DE 44 at 10.]

In support of his motion, Gutierrez argues the COVID-19 pandemic is an extraordinary and compelling reason to consider a reduction in his sentence, that prisons are "hot spots" and "create the ideal environment for transmission of contagious diseases" and that "it is practically impossible to 'social distance' to prevent transmission." [DE 44 at 2.]  He includes his age and medical conditions of diabetes, high cholesterol and high blood pressure as factors that put him at risk. *Id.* at 1. Gutierrez provided his medical records which support these medical diagnoses. [DE 44-1 at 22-104.]  Gutierrez also exhausted his administrative remedies by requesting compassionate release with the Bureau of Prisons (BOP), which was denied November 20, 2020. *Id.* at 1.

## Discussion

Gutierrez requests compassionate release under the First Step Act and he bears the burden of showing that he is entitled to compassionate release. *See United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 U.S. Dist. LEXIS 17139, at *1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31. 2020). "A district court may grant an inmate's request for compassionate release if it finds that extraordinary and compelling reasons warrant such a reduction after considering applicable factors listed in § 3553(a)." *United States v. Levine*, 2021 U.S. App. LEXIS 1627, at *4-5, 2021 WL 218327, at *2 (7th Cir. 2021) (citing *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A))).

Gutierrez has fully exhausted his administrative remedies and so the matter is now properly before me. *See* 18 U.S.C. § 3582(c)(1)(A). The First Step Act provides that the Court may reduce the term of imprisonment after considering the factors set forth in section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Although the statute also requires that a reduction be "consistent with applicable policy statements issued by the Sentencing Commission," the Seventh Circuit has held that, presently, there is no "'applicable' policy statement covering prisoner initiated applications for compassionate release." *Gunn*, 980 F.3d at 1181. This is because the Sentencing Commission has not yet amended the Guidelines to reflect the change in the statute. *Id.* In any event, the factors listed in section 3553(a) do not warrant a release in this case nor are there extraordinary and compelling reasons to grant a release.

The section 3553(a) factors, which are well-known by this point, include the nature and circumstances of the offense and history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the kinds of sentences and sentencing range for the applicable category of offense committed.  18 U.S.C. § 3553(a).  The government argues that the section 3553(a) factors weigh against reduction in sentence in Gutierrez's case, and I agree.

Gutierrez pleaded guilty to knowingly distributing more than one kilogram of heroin and I sentenced him to 46 months in prison, which was well below the Guideline sentence of 57 to 71 months.  At the time of his sentencing, I took into account Mr. Gutierrez's age, his physical condition, and his status as a first-time offender.  Any further reduction in his sentence would not be justified given the serious and dangerous nature of Gutierrez's offense given the quantity of heroin involved in the case. Gutierrez set up the exchange and delivered heroin prior to being arrested. Under Section 3553(a), these facts strongly favor denying compassionate release.  In sum, I find the Section 3553(a) factors of punishment, deterrence, protecting the public and respect for the law do not warrant release in this case.  *See, e.g., United States v. Marquis Medellin*, 2020 WL 4048139, 2:15-cr-72-PPS (N.D. Ind. July 20, 2020) (denying request for compassionate release based in part on the severity of the offense).

In turning to whether there are "extraordinary and compelling reasons [that] warrant such a reduction" I can certainly look for guidance from the policy statement

set forth in the United States Sentencing Guidelines (USSG) § 1B1.13, even if it is out of date.  That provision offers specific examples of what constitutes an extraordinary and compelling circumstance, which include, *inter alia*: the defendant is suffering from a terminal illness; the defendant is suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility; or other reasons as determined by the Director of the BOP.  USSG § 1B1.13 cmt. n. 1.

     Here, Gutierrez's health issues by themselves do not constitute extraordinary or compelling reasons to reduce his sentence. Gutierrez's motion specifically mentions diabetes, high cholesterol, and high blood pressure and supports this with his medical records but does not detail the severity of any of these conditions. [DE 44 at 1, 44-1.] The government asserts that his medical conditions are well-controlled and do not constitute an extraordinary and compelling factor outweighing the 3553(a) factors. [DE 49.]  The records from Moshannon Valley Correctional Facility show regular checkups and prescribed medication for treatment for Gutierrez's diabetes, high cholesterol, and high blood pressure and that Gutierrez's conditions are under control. [DE 44-1 at 18-74.] These are not extraordinary conditions justifying Gutierrez's release.  *See, e.g.*, *United States v. Carpenter*, No. 2:14-cr-309-GEB, 2019 WL 7631396, at *2 (E.D. Cal. Dec. 23, 2019) (denying compassionate release where the records "evince that [the prisoner's] medical conditions are not life-threatening and should not limit her self-care ability."); *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D. N.M. 2019) (quotation omitted) ("In

exercising discretion under § 3553(a) and the First Step Act, most courts treat compassionate release due to medical conditions as . . . a rare event."); *United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019) (denying compassionate release to defendant suffering from multiple conditions, including potential kidney failure, because they did not "impair his ability to provide self-care within the correctional facility.").

The real question is whether Gutierrez's health, along with the enhanced risk of contracting COVID-19 at Moshannon Valley Correctional Facility, justifies release. Even considering Gutierrez's diabetes, high cholesterol, and high blood pressure during the COVID-19 pandemic, it still does not meet the extraordinary and compelling standard in this case.  While the CDC guidance provides that people with diabetes are at an increased risk of severe illness from COVID-19 and people with high cholesterol and blood pressure might be at an increased risk of illness from COVID-19, it lists a number of precautionary steps to reduce the risk such as having a month supply of medication on hand, washing hands, avoiding close contact, wearing masks, and avoiding travel.[1]

According to the government, the Moshannon Valley Correction Facility and the BOP have taken appropriate steps to protect inmates and curb the spread of infection. [DE 49 at 10-15.]  Consistent with the CDC guidance, as noted by the government, the BOP has modified its operations to minimize the risk of COVID-19 transmissions by

---

[1] *People with Certain Medical Conditions*, CDC, www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 26, 2021).

instituting an Action Plan for all prisons, which includes providing weekly testing, allowing for limited gatherings, requiring all staff and inmates to wear masks, quarantining asymptomatic individuals and symptomatic individuals until either they test negative or are released by medical personnel, ceasing in-person social visitation (inmates are given 500 telephone minutes per month), and screening attorneys before visiting an inmate. *Id.*; *see COVID-19 Status*, BOP, www.bop.gov/coronavirus/covid19_status.jsp (last visited Jan. 26, 2021). While I am certainly sympathetic with Gutierrez's situation and his concern about potentially becoming infected with COVID-19 from someone else at the facility, I do not think this is an extraordinary and compelling reason to justify release. S*ee United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020) ("the mere presence of COVID-19 in a particular prison (or the BOP generally) cannot justify compassionate release - if it could, every inmate in that prison could obtain release."); *United States v. Collins*, No. 14-cr-30038, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020) (denying motion for compassionate release, recognizing "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that makes him more susceptible to the disease.").

## Conclusion

Despite the severity of the COVID-19 pandemic, Onesimo Gutierrez's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [DE 44] is **DENIED**. Gutierrez has not shown the factors under section 3553(a) warrant release or that extraordinary and compelling reasons warrant such a reduction under § 3582(c)(1)(A).

**SO ORDERED.**

**ENTERED: January 26, 2021.**

                                           /s/   Philip P. Simon
                                           PHILIP P. SIMON, JUDGE
                                           UNITED STATES DISTRICT COURT